UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LENOX CORPORATION,<br><br>        Plaintiff,<br>   v.<br><br>WILLIAM J. ROBEDEE, *et al.*,<br><br>        Defendants. | Civil Action No. 15-1654 (MAS)(DEA)<br><br>**MEMORANDUM OPINION & ORDER** |

ARPERT, Magistrate Judge.

This matter comes before the Court on the following motions: (1) a motion for reconsideration by Defendant William J. Robedee ("Robedee") of this Court's February 25, 2016 Order granting Plaintiff's application seeking the production of a hard drive for a forensic examination; (2) a motion to seal by Plaintiff Lenox Corporation ("Plaintiff" or "Lenox"); and (3) a motion by Lenox for leave to amend the Complaint. The Court has carefully considered the submissions of the parties and decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, the motion for reconsideration is denied, the motion to seal is denied without prejudice, and the motion to amend is granted.

**I.  Background**

In or about early 2014, Lenox and Nambé, LLC ("Nambé"), entered into discussions about the possibility of Lenox acquiring Nambé. At that time, Defendant Robedee was Lenox's Chief Legal Officer and Louis Scala ("Scala", together with Robedee, "Defendants") was a Senior Vice President who later became a consultant to Lenox. The claims in this action arise out of allegations that Robedee improperly approached Nambé about the

possibility of Nambé hiring him and Scala during the time that Lenox and Nambé were engaged in discussions about a possible transaction between them. Ultimately, no deal between Lenox and Nambé was reached, and both Defendants were hired by Nambé. Plaintiff claims that Defendants' actions constitute a breach of their fiduciary duties, a breach of their duty of loyalty to Lenox, civil conspiracy, unfair competition and breach of contract on the part of Scala.

Since the initial conference in this matter on June 6, 2015, the parties have engaged in discovery. Paper discovery has been exchanged and Plaintiff has taken depositions of Defendants. Plaintiff has also taken the depositions of three non-party witnesses.

## II.  Analysis

A.  Motion for Reconsideration

On February 25, 2016, this Court granted an application by Plaintiff that sought the production of a hard drive in the possession of Robedee in order to allow Plaintiff to undertake a forensic examination of that drive. *See* ECF No. 58. According to Plaintiff, the drive was provided by Lenox to Robedee for use in connection with his employment with Lenox, and hard copies of documents from the hard drive that were produced in discovery confirm that the drive contains Lenox's confidential business information. Lenox sought to have the drive examined in order to identify all of Lenox's information on the drive and to determine if such information had been exported elsewhere from the drive. Lenox outlined a protocol for the forensic examination (the "Lenox protocol"), which the Court ultimately adopted with minor modifications. In opposing Lenox's original application, Robedee argued, among other things, that the hard drive contains non-Lenox materials protected by the attorney-client privilege and work product doctrine.

Robedee now moves for reconsideration of the Court's Order.  Robedee contends that he has no intention of avoiding examination of the hard drive.  However, he objects to the Lenox protocol as "unworkable and unjust" because it allegedly fails to protect privileged and non-Lenox documents.  Local Civil Rule 7.1(i) governs motions for reconsideration and requires the moving party to "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]"  L. Civ. R. 7.1(i).  The burden on the moving party is quite high and reconsideration is granted very sparingly.  To prevail on such a motion, the movant must demonstrate either: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice."  *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Notably, a motion seeking reconsideration may not be used by a party to "restate arguments that the court has already considered."  *Lawrence v. Emigrant Mortg. Co.*, Civ. No. 11–3569, 2012 WL 5199228, *2 (D.N.J., Oct. 18, 2012).  Nor may such a motion be used "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *NL Indus., Inc. v. Comm. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996).  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."  *Tishcio v. Bontex, Inc.*, 16 F.Supp.2d 511, 532 (D.N.J.1998) (internal citation omitted).  Further, where a party merely has a difference of opinion with the court's decision, the issue should be raised through the normal appellate process; reconsideration is not the appropriate vehicle.  *Dubler v. Hangsterfer's Laboratories*, Civ. No. 09–5144, 2012 WL 1332569, *2 (D.N.J., Apr. 17, 2012) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001)).

The Court finds Robedee's motion to be little more than an attempt to reargue the issues previously before the Court. Robedee advances arguments that he raised or could have raised previously. A motion for reconsideration, as noted, is not a procedural vehicle for parties to take a "second bite at the apple." *See Tischio*, 16 F.Supp.2d at 533; *see also United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994) ("The purpose of the [reconsideration] rule ... is… to prevent parties from filing a second motion, with the hindsight provided by the court's analysis, covering issues that should have been raised in the first set of motions."). In rendering its original decision, the Court did not overlook any fact or misunderstand the record. As such, Robedee's motion for reconsideration is denied.

B.  Motion to Seal

On March 10, 2016, Plaintiff electronically filed a letter with the Court and has moved to seal an exhibit attached to that letter. Plaintiff purports to bring its motion pursuant to the procedure set forth in Paragraph 9 of the Amended Discovery Confidentiality Order, which states that "[a]ll requests to seal documents filed with the Court shall comply with Local Civil Rule 5.3." ECF No. 46. Plaintiff's motion, however, fails to meet the basic requirements of the Rule.

There is a presumption of access to judicial records. *See In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir.2001). As such, a party seeking to seal a portion of the judicial record bears the burden of demonstrating that "disclosure will work a clearly defined and serious injury to the party seeking disclosure." *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994). In this District, motions to seal are governed by Local Civil Rule 5.3. Under Rule 5.3, "[a]ny motion to seal or otherwise restrict public access ... shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant

4

the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).  Plaintiff has simply failed to address any of these points in its motion. Plaintiff's motion to seal, therefore, is denied.  Denial of the motion, however, is without prejudice to Plaintiff re-filing a motion within 30 days that addresses the requirements of Local Rule 5.3.

C.  Motion to Amend

Plaintiff seeks to amend its Complaint to add new claims and allegations that it contends are based upon facts learned in the course of discovery to date.  As to Robedee, the proposed Amended Complaint adds: (1) a cause of action for conversion and related factual allegations; and (2) a cause of action for tortious interference with prospective economic opportunity.  As to Scala, the proposed Amended Complaint adds tortious interference and breach of contract claims centered upon: (1) allegations that the Scala "intentionally and maliciously intervened and disrupted Nambé's consideration of a possible transaction with Lenox", Proposed Amended Compl. at ¶111; (2) allegations that Scala assisted Robedee in securing employment with Nambé in violation of a Release Agreement entered into between Scala and Lenox; and (3) allegations that Scala solicited two Lenox business partners and induced them to provide services to Nambé in violation of the Release Agreement. Defendants have opposed Plaintiff's motion, arguing that the proposed amendments are untimely, futile and prejudicial.

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires."  The decision to grant leave to amend rests within

5

the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Generally, undue prejudice is the "touchstone" for denial of leave to amend. *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981). Undue prejudice exists when the non-moving party is "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [moving party] been timely." *Id.* at 426 (citation omitted). Incidental prejudice is not a sufficient reason to deny leave to amend; rather, any resulting prejudice must be truly "undue." *Id.*

1.  Undue Delay

Defendants argue throughout their briefs that Lenox improperly delayed bringing its motion to amend the Complaint, stating that the proposed amendments could have been made at an earlier time. However, Lenox filed its motion within the deadline set by the Court. *See* Case Management Order at ECF No. 50 (setting deadline for the filing of "[a]ny motion to amend the pleading or join new parties"). The deadline from the original Scheduling Order was extended after Lenox properly requested and was granted extensions of that date. As such, the Court finds neither undue delay in the filing of the motion nor undue prejudice to the Defendants based upon the timing of the motion.

2. Futility

Defendants also argue that the proposed Amended Complaint is futile.  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted).  To evaluate futility, the Court uses "the same standard of legal sufficiency" as applied to a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  To determine if a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face [.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Put succinctly, the alleged facts must be sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  In determining futility, the Court considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

a. Conversion

Robedee first argues that Plaintiff's proposed claim for conversion is futile. Conversion is the exercise of control or dominion over another's property that is inconsistent

with the owner's rights. *LaPlace v. Briere*, 404 N.J. Super. 585, 596 (App. Div. 2009); *Griffith Mortuary, Inc. v. Griffith Funeral Home, Inc.*, 2015 Pa. Dist. & Cnty. DEC LEXIS 351, *13-14 (Common Pleas 2015).[1]  The claim for conversion in the proposed Amended Complaint is based allegations that Robedee downloaded thousands of pages of Lenox's confidential information to a hard drive, took the hard drive and the documents when he left Lenox to go work for a competitor, and refused to return the materials to Lenox.  The Court finds these allegations sufficient to permit the amendment.  Robedee's futility arguments as to this claim focus largely on the claim's underlying merits, *e.g.*, arguing that Lenox never asked for the return of the hard drive or files upon it.  ECF No. 79 at 19.  Such fact-based arguments, however, are more appropriate for summary judgment and simply do not show that the claim is futile under the relevant standard.

     b.  Tortious Interference

Both Robedee and Scala also contend that the proposed claim for tortious interference with prospective economic opportunity is futile.  In particular, they take issue with the fact that Lenox is revising/removing allegations from the original Complaint regarding a key meeting that took place between Lenox and Nambé.  In the original Complaint, Lenox described a meeting that took place on August 5, 2014 between Lenox and Nambé as follows:

> On August 5, 2014, a meeting was held in New York City among Nambé's representatives and Cameron and Robedee to discuss a possible transaction.  *It was clear from the meeting that the discussions would be going nowhere*.

ECF No. 1 at ¶ 35 (emphasis supplied).  Later in the Complaint, Lenox refers to this same meeting as a "dead-end meeting."  *Id.* at ¶ 39.  However, in the proposed Amended

---

[1] While Defendants cite Pennsylvania law, Plaintiff contends that New Jersey law may apply to at least some of its claims.  Given that there appears not be a conflict of those laws applicable to this motion, the Court need not resolve the question at this juncture.

Complaint, Lenox removes its contentions that "discussions were going nowhere" and the description of the meeting as "dead-end," and adds allegations that Nambé was still considering entering into a transaction with Lenox after the August 5, 2014 meeting. For example, the proposed Amended Complaint alleges that Nambé's representative stated at the August 5th meeting that the owners of Nambé were meeting on August 21, 2014 to discuss a potential transaction with Lenox and that Robedee and a Nambé board member continued to exchange emails about a possible transaction after the August 5th meeting. Proposed Amended Compl. at ¶¶ 44-45. Defendants argue that these amendments improperly shift the timing of events and transform the underlying premise of Lenox's claims. Scala also argues that the doctrine of judicial estoppel prevents Lenox from taking "irreconcilably inconsistent" positions in this litigation.

In response, Lenox states that it merely seeks to correct its erroneous understanding of the facts surrounding the August 5th meeting based upon what was learned through discovery. Indeed, the allegations in the original Complaint about discussions "going nowhere" and the description of the meeting as being a "dead-end" are not the hard-and-fast factual assertions that Defendants characterize them to be. Rather, they describe an impression that Lenox had of the meeting based on the facts known to it at the time. It is entirely possible that an impression can change when new facts are learned, and the Court finds no basis to conclude that the new allegations are put forth in bad faith or otherwise should not be permitted.

Furthermore, Scala's arguments that the doctrine of judicial estoppel applies here have no merit. "Judicial estoppel is an extraordinary remedy and should be applied only in a case where there has been an affront to the Court's integrity." *Astrazeneca LP v. Breath Ltd.*, No. 08-1512, 2014 WL 5093516, at *1 (D.N.J. Oct. 10, 2014). Judicial estoppel applies only if:

> (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001). Even if the allegations in the proposed Amended Complaint are "irreconcilably inconsistent" with those in the original Complaint, Defendants arguments fall far short of establishing that the other two elements have been met.

### c. Breach of Release Agreement

Scala argues that Lenox should not be permitted to amend the Complaint to add allegations that Scala breached his Release Agreement by soliciting Defendant Robedee to work for Nambé because such allegations are futile. Specifically, Lenox alleges that Scala breached his Release Agreement by "actively assist[ing] Robedee in securing employment at a competitor." Proposed Amended Compl. at ¶ 86. As set forth in the Proposed Amended Complaint, Scala allegedly assisted Robedee by co-authoring business plans and agreeing to be part of a team, which was allegedy the only way that Nambé would hire Robedee. The Proposed Amended Complaint also alleges that Scala breached the Agreement when he "solicited" Michael Altomari and Stefano Melani, two "business partners" of Lenox and induced them to begin providing services to Nambé. Scala contends such claims are futile because none of the conduct alleged amounts to "solicitation" under the Release Agreement. The Court, however, finds that Scala's arguments, which center on issues of contract interpretation, would be more appropriate at a later stage in this litigation.

By entering in the Release Agreement with Lenox, Scala agreed that for a period of 2 years from the date of his termination he would not "directly or indirectly … solicit or

10

endeavor to entice away from [Lenox] … or otherwise materially interfere with the business relationship of [Lenox] with any person …who is … (i) employed by, associated with, or a consultant to [Lenox], or (ii) a customer or client of, … supplier to, or other party having material business relations with [Lenox]. Release Agreement, § 9 at ECF No. 78-1. The Agreement clarifies that activities prohibited by this section include "encouraging employees of [Lenox] to consult or be employed by competitors … and "assisting any other person … in their efforts to engage in any of the activities prohibited by this [section]." *Id.* The Agreement further provides that Scala would "conduct [himself] in a manner that was not detrimental to the interest of [Lenox]" and would "not … intentionally do anything that damages [Lenox], its services, its reputation, its financial status or its business relationships." *Id.* at § 10. The language here is broad. Moreover, the Court must read all factual allegations in a light most favorable to the Plaintiff. As such, the Court finds that Plaintiff has set forth sufficient factual matter in the proposed Amended Complaint to permit the amendment; the Court does not find that the proposed claim for breach of contract to be futile.

3.  <u>Prejudice</u>

As Lenox points out, Defendants repeatedly invoke the word "prejudicial" throughout their briefs, though they offer little in the way of any evidence of undue prejudice. Defendants complain, for example, of the alleged burden of additional discovery that will be required by the new allegations. However, the additional discovery that will be required by the amendments is incidental and appears to be relatively limited in nature. Further, when Plaintiff filed its motion seeking leave to amend, the parties appeared to be far from completing discovery and at least two months of the discovery period remained. "Generally, courts have not found unfair prejudice when a party moves to amend while discovery is still

open." *Luppino v. Mercedes-Benz USA, LLC*, No. 09-CV-5582, 2014 WL 4474004, at *4 (D.N.J. Sept. 4, 2014). The Court here similarly finds that permitting Lenox to amend will not result in unfair prejudice to Defendants.

### III. Conclusion and Order

The Court having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, and for the reasons set forth above;

IT IS on this 25th day of May, 2016,

**ORDERED** that Robedee's motion [ECF No. 62] for reconsideration is DENIED; and it is further

**ORDERED** that Plaintiff's motion to seal [ECF No. 67] is DENIED; and it is further

**ORDERED** that that ECF No. 66 shall remain under temporary seal pending the filing of a new motion to seal, which Plaintiff is to file no later than 30 days from the date of this Order, and which should meet the requirements of Local Civil Rule 5.3; and it is further

**ORDERED** that Plaintiff's motion [ECF No. 68] for leave to file an amended complaint is GRANTED; and it is further

**ORDERED** that Plaintiff is to file its Amended Complaint no later than 5 days from the date of this Order.

                                           s/ Douglas E. Arpert
                                           DOUGLAS E. ARPERT, U.S.M.J.