UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
LENOX CORPORATION,                  :
:
              Plaintiff, :
   v.                               :   Civil Action No. 3:15-cv-1654-BRM-DEA
:
:
WILLIAM J. ROBEDEE, et al.,         :
:   **OPINION**
             Defendants.         :
_____:

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is an appeal by Defendant William J. Robedee ("Robedee") of Magistrate Judge Arpert's May 26, 2016 Order and Opinion, denying Robedee's Motion for Reconsideration. Upon reviewing the papers submitted by counsel, for the reasons set forth below and for good cause having been shown, Robedee's appeal is **DENIED**.

    **I.**    **BACKGROUND**

      On March 5, 2015, Plaintiff Lenox Corporation ("Lenox") filed a complaint against its former employees, Defendants Robedee and Louis Scala ("Scala") (collectively, "Defendants"), alleging unfair competition, civil conspiracy, and breaches of fiduciary duty, duty of loyalty, and contract. (Dkt. No. 1.) Specifically, Lenox contends Robedee, its former Chief Legal Officer, derailed acquisition negotiations for his own benefit, as well as for the benefit of Scala, Lenox's former Senior Vice President, in order to secure employment at and equity stake in Nambé for himself and Scala. (*Id.*)

**A.  Discovery History**

Judge Arpert presided over, and continues to preside over,[1] the discovery issues between the parties. The record reveals a contentious history of discovery disputes, among others, which the Court will discuss as it pertains to this motion.[2]

For months, the parties clashed over the scope of discovery. (*See, e.g.*, Dkt. Nos. 16-17, 22-29.) Following several submissions, conferences, and directives from Judge Arpert to meet and confer and make a good faith effort to resolve their discovery disputes (*see, e.g.*, Dkt. Nos. 18, 30), the parties were directed to submit a joint status report, which was submitted on November 6, 2015. (Dkt. No. 31.)

Among other disputes noted in the status report was an issue regarding production of Robedee's hard drive, the subject of the motion underlying this appeal. Specifically, Lenox stated that Robedee saved Lenox-related documents and emails on a hard drive that he refused to make available to a forensic expert to be retained by Lenox. (*Id.* at 6.) Robedee argued that he provided Lenox with emails relevant to Robedee's employment and only redacted personal, marital privileged, and non-Lenox attorney client privileged emails. (*Id.* at 6-7.) Robedee contended Lenox does not have a right to review these emails, as they are not relevant to the litigation and would violate the attorney-client privilege for his other clients. (*Id.*)

Judge Arpert held a phone conference on November 9, 2015, and a comprehensive in-person status conference on December 17, 2015, addressing all pending discovery issues from the

---

[1] On September 8, 2016, Judge Arpert referred the case to a special discovery master and set forth a briefing schedule for certain discovery issues. (Dkt. No. 115.) On September 9, 2016, John J. Hughes, U.S.M.J. (ret.) was appointed as special master. (Dkt. No. 116.)

[2] Judge Arpert held an in-person status conference on December 17, 2015, during which he more thoroughly described the parties' burdensome discovery practices. (Dkt. No. 51.)

status report, as well as counsel's escalating pattern of quarrelling over immaterial discovery issues. (Dkt. No. 51.)

**B. Lenox's Renewed Request For Robedee's Hard Drive**

On February 2, 2016, Lenox renewed its request that a third-party conduct a forensic examination of Robedee's hard drive, alleging that Robedee inappropriately copied Lenox's confidential information before he left Lenox to work for Nambé. (Dkt. No. 52.) In support, Lenox cited to the thousands of emails that were turned over by Robedee from the hard drive, which Lenox argued included confidential information. (*Id.* at 1.) Lenox contended the only way to ensure return of all confidential information was to conduct a forensic exam (*id.* at 2), and Lenox provided the court with a proposed protocol for conducting the examination (the "Lenox Protocol"). (Dkt. No. 52-1.)

Robedee opposed Lenox's request, in part, arguing the hard drive contains third-party client files protected by attorney-client privilege. (Dkt. No. 56, 1.) Robedee also cited the December 17, 2015 status conference, stating Lenox did not preserve its right to seek a full examination of the hard drive. (*Id.* at 5.) Further, Robedee noted that all William_Robedee@lenox.com emails, privileged or not, should have been preserved on Lenox's server and Lenox could have reviewed them at any time. (*Id.*)

Robedee reiterated details from his answers to interrogatories regarding the hard drive production. (*Id.* at 2-4.) Specifically, Robedee explained that it was his practice to back up and retain all client files electronically on a hard drive. (*Id.* at 2.) This included Lenox and non-Lenox clients, and Robedee contends Lenox was aware of and assisted him with saving his files to a Western Digital MyBook 1TB hard drive ("MyBook"). (*Id.*) Upon commencement of this litigation, all files were backed up to a Western Digital My Passport Ultra 1TB hard drive

3

("Passport"), and both hard drives were provided to Robedee's counsel. (*Id.* at 3.) From there, Robedee's counsel had a forensic mirror image of the MyBook hard drive made by a third party provider. (*Id.*) From that image, all of the files containing emails to and from William_Robedee@lenox.com, including their attachments, were sorted out by a third party document management processing entity and produced to Lenox (*id.*), omitting only "purely personal, marital privileged or non-Lenox client privileged information that inadvertently was sent or received from [Robedee]'s lenox.com email address." (*Id.* at 4).

Despite the objection, Robedee stated he would "consent to having, at Lenox's expense, (1) the [h]ard [d]rive secured by an independent third party examiner and (2) a limited examination of the [h]ard [d]rive by that independent to confirm whether or not the Lenox documents contained thereon have been exported from the [h]ard [d]rive for purposes other than this litigation." (*Id.* at 6-7.)

Lenox, in further support of its request for a forensic examination, alleges the MyBook hard drive was intended for Robedee's use in his position as Lenox's Chief Legal Officer and was set up by Lenox's employees as such. (Dkt. No. 57, 1.) Thus, Robedee was required to return the files on demand and should not have retained them when he went to work for a competitor. (*Id.* at 1-2.) In sum, Lenox argues Robedee was not authorized to continue to have access to the hard drive. (*Id.*)

On February 25, 2016, Judge Arpert granted Lenox's request for the production of the hard drive for forensic examination by an independent third party. (Dkt. No. 58 (the "February Order").) The February Order imposed the Lenox Protocol, with modifications as to the proposed dates and costs, requiring Lenox to bear the initial cost with the right to make an application to the Court for reimbursement based on the result of the examination. (*Id.* at 2.)

**C.  Motion For Reconsideration**

On March 9, 2016, Robedee filed a motion for reconsideration of Judge Arpert's February Order, but noted, however, he "d[id] not object to the Court's Order requiring him to submit to an independent forensic examination . . . , he only objects to the excessive, unreasonable and unworkable terms of the Lenox Protocol." [3] (Dkt. No. 62-1, 1.) Nevertheless, Robedee's motion was riddled with objections to the forensic exam, followed by objections to the method in which the February Order was issued. (*Id.* at 1-2, 5-6.) Ultimately, Robedee moved for reconsideration pursuant to Local Civil Rule 7.1(i) alleging the Court overlooked a matter or controlling decision (*id.* at 15) and that the February Order needs to be reconsidered to prevent a manifest injustice (*id.* at 12).

Robedee contends the Court overlooked the sensitive nature of the information on the hard drive and that the Lenox Protocol would expose to Lenox highly sensitive privileged information contained on the MyBook hard drive, some of which predates Robedee's employment with Lenox, resulting in a manifest injustice. (*Id.* at 12-13, 15.) Robedee argues that it was always his practice to electronically store his clients' files, including his Lenox files, and the Lenox IT Department only assisted him when he bought a new hard drive – the MyBook – after his old hard drive failed. (*Id.* at 3.) Robedee also raised concerns that the Lenox Protocol did not provide for any method requiring Lenox to return Robedee's clients' privileged information at the conclusion of the litigation. (*Id.* at 14.)

Moreover, Robedee claims the Court overlooked the mechanics of how the Lenox Protocol would operate. (*Id.* at 16.) Therefore, Robedee proposed a revised protocol[4] in which he advocated:

---

[3] The Court notes that Judge Arpert made modifications to the Lenox Protocol when issuing the February Order. Nevertheless, Robedee continues to refer to the protocol issued in the February Order as the Lenox Protocol.
[4] Robedee contends this proposal was rejected by Lenox prior to its filing of the motion for reconsideration. Despite its proposal, Robedee maintains the previously conducted forensic exam and subsequent document production was

5

(1) designating the hard drive files as "Attorney-Eyes Only" pursuant to the Discovery Confidentiality Order; (2) returning Robedee's files from before and after his employment with Lenox; and (3) the creation of an index by the forensic examiner. (*Id.* at 6-7.)

Finally, Robedee took issue with the method in which Lenox sought and Judge Arpert granted relief. (*Id.* at 5-6.) Robedee claims to have understood Lenox's request to be an informal one and, consequently, he "did not fully analyze and explain to the Court the various reasons that the Lenox Protocol is unworkable in [his] [o]pposition [l]etter." (*Id.* at 5.) Robedee expected Lenox's request to be adjudicated using a joint submission from the parties, as he understood that to be the Court's preference. (*Id.* at 5-6.)

Lenox opposed Robedee's motion for reconsideration asserting there was no basis for the motion because no new evidence arose since the February Order and the February Order did not overlook any law or facts. (Dkt. No. 76, 1.) Lenox cited Robedee's 49-page opposition submission[5] as evidence that Robedee had ample opportunity to oppose Lenox's request for a forensic examination, and further cited Robedee's consent to the forensic examination, objecting only to Lenox's proposed payment plan. (*Id.* at 3.) Thus, Lenox argues Robedee's proposed protocol is untimely, unnecessary, and does not appropriately protect the parties' interests. (*Id.* at 4.)

In further support of his motion for reconsideration, Robedee claims he did not consent to the Lenox Protocol but instead, offered a compromise in which he would submit to a forensic examination with limitations in order to address Lenox's preservation concerns, so long as Lenox would be responsible for the cost. (Dkt. No. 77.) He again states he refrained from objecting to

---

sufficient. Robedee returned all emails and email attachments sent and received on the William_robedee@lenox.com email address and saved to the hard drives, barring some marital privileged and non-Lenox client privileged emails.
[5] The Court notes the entire submission, including exhibits, totaled forty-nine (49) pages; the letter brief was seven (7) pages. (Dkt. No. 56.)

every aspect of the Lenox protocol because he expected the Court to resolve the matter through a joint submission. (*Id.*)

On May 26, 2016, the Court denied Robedee's motion for reconsideration ("Reconsideration Order"), finding it to be "little more than an attempt to reargue the issues previously before the Court." (Dkt. No. 82, 4.) Finding it did not overlook any fact or misunderstand the record, the Court denied the motion. (*Id.*)

## D.  Appeal Of The Reconsideration Order

Robedee now appeals the Reconsideration Order pursuant to Fed. R. Civ. P. 72(a) and L. Civ. R. 72.1(c)(1)(A) insofar as it requires Robedee to submit to the Lenox Protocol. Alternatively, Robedee seeks an order entering his proposed revised protocol or an order for further proceedings. (Dkt. No. 84, 2.)

Robedee argues the Reconsideration Order should be reversed because it is clearly erroneous and contrary to well-settled law protecting privileged documents from disclosure. (Dkt. No. 84-1, 2.) Robedee contends that, had the Court correctly applied the law, the Lenox Protocol would not have been imposed. (*Id.*) In other words, Robedee asserts the Reconsideration Order is "clearly erroneous or contrary to law" because the Court misapplied or overlooked facts or law. (*Id.*) In support, Robedee cites and analyzes case law regarding the public policy protecting attorney-client communications and maintains he has held this position throughout the litigation without objection from Lenox as to that public policy. (*Id.* at Section B(1).) Robedee further argues the Reconsideration Order did not specifically address the specifics of the protocols or Robedee's privilege issue. (*Id.* at Sections B(2), C.)

Lenox argues the Court should apply the abuse of discretion standard of review rather than the "clearly erroneous or contrary to law" standard because this is a discovery issue within the

7

exclusive authority of the Magistrate Judge. (Dkt. No. 87, 6-8.) Lenox further states Robedee had ample opportunity to present its arguments and consented to the Lenox Protocol. (*Id.* at 1.) Lenox agrees with the reasoning behind the Reconsideration Order in that Robedee used the motion for reconsideration as an attempt to reargue an adjudicated motion. (*Id.*) Finally, Lenox contends the Lenox Protocol is adequately tailored and requires the forensic examiner to create an index for review by the parties. (*Id.* at 3.)

In reply, Robedee maintains that he filed this motion solely because of a "grave concern about the sacred attorney-client privilege" and further maintains that he never consented to the Lenox Protocol for the forensic examination. (Dkt. No. 91, 1-2.)

**II. LEGAL STANDARD**

With respect to a district judge's review of a magistrate judge's decision, Fed. R. Civ. P. 72(a) states "[t]he district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id*. Similarly, this Court's Local Rules provide that "[a] Judge shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A).

Thus, a district judge may reverse a magistrate judge's discovery order if the order is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. Pro. 72(a); L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function," permitted only to review the record that was before the magistrate judge).

The burden of showing that a ruling is "clearly erroneous or contrary to law rests with the party filing the appeal." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A district judge may find a magistrate judge's decision "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). The magistrate judge's ruling may be "contrary to law" if it misinterpreted or misapplied applicable law. *Kounelis*, 529 F. Supp. 2d at 518; *Gunter*, 32 F. Supp. 2d at 164.

## III. DECISION

As an initial matter, Robedee's arguments regarding the law governing attorney-client privilege and related public policies cannot be considered. The cited case law[6] and associated argument was not before the magistrate judge and therefore cannot be taken into consideration on the district court's review. *See Haines*, 975 F.2d at 93.

The remainder of Robedee's position remains unchanged, and is often repeated verbatim, from the record below, including: the November 2015 status report, Robedee's opposition to Lenox's renewed request, motion for reconsideration, and appeal of the Reconsideration Order. This continued repetition does not support Robedee's argument that he did not fully develop his opposition to the Lenox Protocol, that the record was incomplete, or that the Court overlooked Robedee's argument. Each submission by Robedee provided him with another attempt to reargue and reinforce his position. Further, Robedee consented to a forensic examination, and even sought

---

[6] Robedee cited and relied upon the following cases for the first time in the appeal of the Reconsideration Order: *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230-31 (3d Cir. 2007); *Prudential Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572, 581 (D.N.J. 1998); *Kelly v. Ford Motor Co.*, 110 F.3d 954, 961-62 (3d Cir. 1997); *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992); *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423 (3d Cir. 1991); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960-61 (3d Cir. 1984).

modifications to the Lenox Protocol. Judge Arpert, taking Robedee's opposition into consideration, entered the Lenox Protocol with modifications.

The Court is not persuaded by Robedee's argument that Judge Arpert overlooked any law or fact. Unquestionably, that Robedee consistently repeated the same position was among the reasons for denying Robedee's motion for reconsideration. In his decision, Judge Arpert explicitly denied overlooking the record in rendering his original decision, stating instead the motion being denied because, "[t]he Court [found] Robedee's motion to be little more than an attempt to reargue the issues previously before the Court. Robedee advances arguments that he raised or could have raised previously." (Dkt. No. 82, 4.)

This Court is not "left with the definite and firm conviction that a mistake has been committed," and therefore the Reconsideration Order is not "clearly erroneous." *See Dome Petroleum Ltd.*, 131 F.R.D. at 65. Furthermore, it cannot be said the Reconsideration Order is "contrary to law" because Judge Arpert did not misinterpret or misapply the law as it was before him, *see Haines*, 975 F.2d at 93; *Kounelis*, 529 F. Supp. 2d at 518, nor did he overlook any law or fact. L. Civ. R. 72.1(c)(1)(A).[7]

## IV. CONCLUSION

For the reasons set forth above, Robedee's appeal is **DENIED.**

/s/ Brian R. Martinotti
BRIAN R. MARTINOTTI, U.S.D.J.

Dated:  September 19, 2016

---

[7] Notably, even if the court were to apply the "abuse of discretion" standard of review, Robedee would be unable to meet this higher, more deferential standard.